**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PROFESSIONAL SERVICE INDUSTRIES, INC., | ) ) ) | |
| Plaintiff, | ) ) | No. 14-CV-06363 |
| v. | ) ) | Judge John J. Tharp, Jr. |
| DYNAMIC DEVELOPMENT COMPANY, LLC, | ) ) ) | |
| Defendant. | | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Professional Service Industries, Inc. ("PSI") filed this breach of contract action seeking payment for environmental and geotechnical services that it provided to Defendant Dynamic Development Company, LLC ("Dynamic") at several locations throughout Southern California. PSI alleges that Dynamic breached the payment provisions of its contracts with PSI by refusing to pay more than $70,000 in invoices for work PSI performed. In addition, PSI alleges that it is entitled to interest, attorney's fees, and costs related to Dynamic's failure to pay. PSI now moves for summary judgment in its favor. Because no question of material fact exists with regard to PSI's breach of contract claim and PSI has demonstrated that it is entitled to judgment as a matter of law, the Court grants PSI's motion and enters judgment in its favor.

## I.   BACKGROUND

### A.   Northern District of Illinois Rule 56.1 and Dynamic's Evidentiary Objections

As an initial matter, the Court must address Dynamic's objections to consideration of some of the evidentiary materials on which PSI relies to support its summary judgment motion. Northern District of Illinois Rule 56.1 requires that the party moving for summary judgment file "a statement of material facts as to which the moving party contends there is no genuine issue

and that entitle the moving party to a judgment as a matter of law." *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218 (7th Cir. 2015) (citing N.D. Ill. R. 56.1(a)). The statement of material facts must include "specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth" in each paragraph. N.D. Ill. R. 56.1(a). The party opposing the motion for summary judgment must file a response addressing each paragraph in the movant's statement of material facts and asserting any disagreements with "specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Curtis*, 807 F.3d at 218 (citing N.D. Ill. R. 56.1(b)). The party opposing summary judgment must also file a statement of any additional facts that require the denial of summary judgment, with references to the supporting materials relied upon. N.D. Ill. R. 56.1(b).

The district court has discretion to strictly enforce compliance with Rule 56.1. *Curtis*, 807 F.3d at 219 (citing *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009)). The opposing party's failure to admit or deny facts as presented in the moving party's statement of facts, or to cite to any admissible evidence to support facts presented in the opposing party's response renders the facts presented by the moving party as undisputed. *Curtis*, 807 F.3d at 218-19 (citing *Ammons v. Aramark Unif. Servs.*, 368 F.3d 809, 818 (7th Cir. 2004)).

PSI submitted a Rule 56.1 statement of facts supported by three witness declarations with multiple exhibits and a deposition transcript of Dynamic's 30(b)(6) witness. Pl.'s Statement of Facts, ECF No. 73 ("PSOF"). Dynamic submitted objections to two of the PSI declarations. Def.'s Obj. to Decl. of Eric Fraske, ECF No. 89; Def.'s Obj. to Decl. of Maria E.G. Chase, ECF No. 88.

### 1. *Objections to Fraske Declaration*

Dynamic objects to the declaration of PSI employee Eric Fraske (the "Fraske Declaration") because it lacks foundation. Dynamic claims that Fraske does not provide a basis

for his knowledge of various facts in his declaration. However, in his declaration, Fraske explicitly states that it is based on personal knowledge, that he is a principal consultant and branch manager for PSI, that he worked with Dynamic on various projects for more than four years after Dynamic first retained PSI, and that he is knowledgeable regarding the services performed by PSI for Dynamic at the relevant locations. PSOF, Ex. A ¶¶ 1-2, 14. The Court finds that these statements establish that Fraske had direct involvement in PSI's work with Dynamic and are sufficient to establish his personal knowledge of the facts asserted in his declaration. *See Cobra Capital LLC v. LaSalle Bank Corp.*, 455 F. Supp. 2d 815, 817-18 (N.D. Ill. 2006) (denying motion to strike declaration because declaration was based on personal knowledge resulting from declarant's direct involvement in the events in question). Dynamic, of course, could have offered evidence to contradict Fraske's averment of personal knowledge, thereby creating a fact dispute, but it did not do so.

Dynamic also objects to the exhibits attached to the Fraske Declaration, which Fraske attests are "true and accurate" copies of PSI's contracts with Dynamic, because Fraske "did not declare that he is the custodian of records for PSI" and did not "declare that his signature appears anywhere" on the contracts. Def.'s Obj. to Decl. of Eric Fraske ¶¶ 4-9, ECF No. 89. In its response to PSI's statement of facts, Dynamic also argues that the contracts "have not been properly authenticated and are therefore inadmissible." Def.'s Resp. to PSOF ¶ 5, ECF No. 87. Fraske, however, is not required to declare that he is the custodian of records or the signatory of the contracts attached to his declaration to authenticate them. And to the extent that Dynamic's argument betrays a belief that PSI is required to show that the contracts satisfy the hearsay business records exception, it is off-base. A contract is a verbal act, is not hearsay, and is admissible evidence on summary judgment. *Super 8 Motels, Inc. v. Rahmatullah*, No. 1:07-cv-

01358-DFH-DML, 2009 WL 2905463, at *2 (S.D. Ind. Sept. 9, 2009). Therefore, Fraske need not establish the elements required to admit hearsay under the business records exception. PSI need only establish that the contracts are authentic, and "[w]hen a witness with personal knowledge swears that the document is what she says it is, the authenticity requirement is met." *Zielinski v. Pabst Brewing Co., Inc.*, 360 F. Supp. 2d 908, 912 (E.D. Wisc. 2005) (holding that exhibits were properly authenticated and could be considered evidence at summary judgment where witness with personal knowledge swore as to what the documents were). Fraske's declaration adequately establishes his personal knowledge of the business relationship between PSI and Dynamic and based on that personal knowledge, he swears that the exhibits attached to his declaration are true and accurate copies of the relevant contracts between PSI and Dynamic.

Dynamic also objects to Fraske's statements that PSI's "General Conditions" were always included in PSI's contracts with Dynamic because other evidence submitted by PSI contradicts this fact. Dynamic points to two exhibits submitted by PSI as the contracts for work at two locations, which do not include the "General Conditions." But Dynamic's assertion that the statement is contradicted by other documents is not an evidentiary objection that affects the admissibility of the Fraske's declaration or the attached exhibits. Dynamic further objects that the assertions regarding PSI's general conditions are vague because they do not specify whether the conditions changed over time. The Court is not persuaded by this argument and finds the statements are sufficiently specific.

Having considered all of Dynamic's objections to the Fraske Declaration, the Court overrules the objections and finds that the Fraske Declaration and the exhibits attached to it may be considered in support of PSI's statement of facts and motion for summary judgment.

### 2. *Objections to Chase Declaration*

Dynamic also asserts foundation objections to the declaration of PSI employee Maria Chase (the "Chase Declaration"). Dynamic argues that the Chase Declaration provides no explanation regarding the source or derivation of the figures included in an exhibit attached to the declaration that summarizes the amounts owed by Dynamic for multiple unpaid PSI invoices. However, the Chase Declaration and the attached exhibit make clear that it is based upon PSI's invoices to Dynamic and a calculation of 18% interest per year on the unpaid invoices. The declaration establishes that Chase has personal knowledge of the invoices and the interest calculations because she is the vice president of finance for PSI and, in that role, she oversees and is responsible for all of the company's billing and collection of invoices to PSI clients. PSOF, Ex. D ¶¶ 2-3. Dynamic also argues that Chase lacks foundation to state in her declaration that the amounts PSI charged are reasonable and customary in the industry. However, Chase's statement that she has served as PSI's vice president of finance since 2002 is sufficient to establish her personal knowledge of industry rates. The Court overrules Dynamic's objections to the Chase Declaration and finds that it may be considered in support of PSI's statement of facts and motion for summary judgment.

### B. Factual Background

Dynamic asserts that nearly all of the facts contained in PSI's statement of facts are in dispute, but provides no controverting facts or evidence in support of its position. Def.'s Resp. to PSOF, ECF No. 87. Instead, Dynamic cites to its objections to PSI's declarations, which, as stated above, the Court overrules, and makes the general claim that PSI lacks admissible evidence to support certain facts. *Id.* ¶¶ 12, 13, 17-18, 20-21, 23-24, 26-27, 29-30, 32-33, 35-36. But PSI's statement of facts cites to the deposition testimony of Dynamic's 30(b)(6) witness to support each of these facts and Dynamic does not raise a specific evidentiary objection to the

cited testimony. *Id.* Under Federal Rule of Civil Procedure 56(c)(1), PSI may support its statement of facts with deposition testimony. Fed. R. Civ. P. 56(c)(1). Without a specific argument by Dynamic as to why the deposition testimony is inadmissible, the Court finds that PSI's facts are adequately supported. *See Moore v. Shepard*, No. 13-cv-150-JPG, 2015 WL 5062514, at *3 (S.D. Ill. Aug. 26, 2015) (rejecting vague and undeveloped objections regarding deposition testimony); *see also Ace Hardware Corp. v. Marn, Inc.*, No. 06-CV-5335, 2008 WL 4286975, at *1 (N.D. Ill. Sept. 16, 2008) ("The requirements for a response under Local Rule 56.1 are 'not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted.'") (quoting *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000)).

Because Dynamic fails to controvert or establish valid evidentiary objections to PSI's statement of facts, the Court accepts as true the following facts submitted by PSI, which are supported by the record. N.D. Ill. R. 56.1(b)(3)(C); s*ee, e.g.*, *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013).

In 2012 and 2013, PSI and Dynamic entered into seven contracts for construction, materials, and geotechnical services at the following locations in California (the "Locations"): (1) El Centro, (2) Desert Hot Springs, (3) San Bernardino, (4) Blythe, (5) Indio, (6) Lucerne Valley, and (7) Holtville. PSOF, ¶ 6. PSI's General Conditions were included in each of these contracts and provided that PSI would invoice Dynamic once each month for work performed during the preceding period.[1] *Id.* ¶¶ 8-11, Ex. A. The General Conditions further provide that

---

[1] Dynamic attempts to dispute the fact that PSI's General Conditions were included in each contract by stating that other evidence submitted by PSI contradicts this fact. Dynamic points to the exhibits submitted by PSI as contracts for work at the Desert Hot Springs and the Lucerne Valley locations, which do not include the General Conditions document. Def.'s Resp. to PSOF ¶¶ 5, 8-9, ECF No. 87. The work order form for the Desert Hot Springs location states

Dynamic "agrees to pay each invoice within thirty (30) days of its receipt" and "further agrees to pay interest on all amounts invoiced and not paid or objected to for valid cause in writing within said thirty (30) day period at the rate of eighteen (18) percent per annum (or the maximum interest rate permitted under applicable law), until paid." *Id.* ¶ 12, Ex. A. The General Conditions also state that Dynamic agreed to "pay PSI's cost of collection of all amounts due and unpaid after thirty (30) days, including court costs and reasonable attorney's fees" and that all disputes or claims related to the parties' agreement "shall be governed by, construed, and enforced in accordance the laws of Illinois." *Id.* ¶¶ 12, 5, Ex. A.

PSI performed the agreed-upon services at the Locations as indicated in its work proposals and the contracts entered into by PSI and Dynamic. *Id.* ¶¶ 13, 18, 21, 24, 27, 30, 33, 36. Dynamic never raised concerns or objections regarding PSI's work at the Locations and did not incur any additional expenses resulting from PSI's work at the Locations. *Id.* ¶¶ 44-46.

"[c]lient does hereby authorize the above services in accordance with PSI's General Terms and Conditions" and "PSI will provide the services identified below in accordance with PSI's attached General Conditions." PSOF, Ex. A at 13. The agreement for the Lucerne Valley location states "SIGNED AGREEMENT & INITIALED GENERAL CONDITIONS MUST BE RETURNED PRIOR TO STARTING WORK" and also states that "general conditions" are attached. PSOF, Ex. A at 33. Dynamic's 30(b)(6) witness also testified that Dynamic was not aware of any agreed upon work performed by PSI that did not include PSI's General Conditions. PSOF, Ex. C, 79:2-12. Dynamic attempts to qualify the testimony of its 30(b)(6) witness by noting that she "never had any direct dealings with PSI" and that she was not employed by Dynamic at the time of the PSI agreements. Def.'s Resp. to PSOF ¶¶ 10-11, ECF No. 87. However, a 30(b)(6) witness is not limited to her personal knowledge and may testify to matters known or reasonably available to the organization. *In re Peregrine Fin. Grp. Customer Litig.*, No. 12 C 5546, 2015 WL 1344466, at *8 (N.D. Ill. Mar. 20, 2015) (citing *PPM Fin., Inc. v. Norandal USA, Inc.*, 392 F.3d 889, 894-95 (7th Cir. 2004)). Under Rule 30(b)(6), Dynamic had a duty to prepare its deponent to testify adequately on the topics included in PSI's deposition notice or to designate additional witnesses. *See id.* In addition to the 30(b)(6) testimony, former Dynamic employee Jonathon Tanury also stated in a declaration submitted by PSI that "PSI's General Conditions was part of and incorporated into each authorization for PSI's services that I executed on Dynamic's behalf." PSOF, Ex. B ¶ 7. The Court therefore finds that PSI's evidence supports rather than contradicts the fact that its general conditions were included in each of its contracts with Dynamic.

However, Dynamic has refused to pay various PSI invoices, totaling $70,048.77, for work completed at the Locations. *Id.* ¶¶ 14, 19, 22, 25, 28, 31, 34, 37. Dynamic has refused to pay the invoices because it believes it incurred damages and remediation costs at three other California locations in Bellflower, West Compton, and Imperial, where PSI provided services to Dynamic. *Id.* ¶ 48. PSI and Dynamic entered into separate contracts for PSI's services at the Bellflower, West Compton, and Imperial locations. *Id.* ¶ 49.

## II.    DISCUSSION

A motion for summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Kvapil v. Chippewa Cnty.*, 752 F.3d 708, 712 (7th Cir. 2014). When considering a motion for summary judgment, the Court construes the facts and makes all reasonable inferences in favor of the non-moving party. *Jajeh v. Cnty. of Cook*, 678 F.3d 560, 566 (7th Cir. 2012).

PSI argues that it is entitled to summary judgment on its second amended complaint ("SAC") and on the five affirmative defenses asserted by Dynamic in its answer to the SAC. PSI's SAC alleges breach of contract and account stated, but its memorandum in support of its motion for summary judgment asks the Court to grant it summary judgment on the breach of contract claim or, "in the alternative," grant it summary judgment on the account stated claim. Pl.'s Memo. in Supp. of its Summ. J. Mot. 7, ECF No. 72. Dynamic's answer to the SAC pleads the affirmative defenses of negligent misrepresentation, estoppel, mistake of fact, waiver, and setoff.

## A.    Amount in Controversy

Dynamic argues that the Court lacks subject matter jurisdiction over PSI's claims because, according to PSI's second amended complaint and its motion for summary judgment, the amount in controversy, exclusive of interest and costs, is only $70,048.77, which is less than the $75,000 required to establish diversity jurisdiction. A federal district court has diversity jurisdiction over a civil action between citizens of different states only "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."[2] 28 U.S.C. § 1332.

In response, PSI argues that the Court has subject matter jurisdiction because its original complaint alleged an amount in controversy above the $75,000 requirement. The original complaint, which was filed on August 18, 2014, alleged that Dynamic owes PSI $78,043.47 in unpaid invoices for work completed by PSI at eight different locations, plus 18% interest, reasonable attorney's fees, and costs. Compl., ECF No. 1. On August 25, 2014, PSI filed its first amended complaint ("FAC"), which alleged the same amount in controversy for the same eight locations, but added factual allegations regarding the citizenship of Dynamic. Am. Compl., ECF No. 6. More than a year later, PSI submitted an agreed motion for leave to amend its FAC, which was granted, and filed its SAC on September 24, 2015. Second Am. Compl., ECF No. 55. The SAC, which is now the operative complaint, alleges that Dynamic owes PSI $70,049.57 in unpaid invoices for work completed by PSI at seven different locations, plus 18% interest,

_____

[2] Dynamic does not argue that the parties are not diverse and the Court finds that the parties are diverse for purposes of subject matter jurisdiction. PSI is a Delaware corporation with its principal offices in Illinois, PSOF ¶ 4, and is therefore a citizen of Delaware and Illinois. *See Fellowes, Inc. v. Changzhou Zinrui Fellowes Office Equip. Co. Ltd.*, 759 F.3d 787, 788 (7th Cir. 2014). Dynamic is a California limited liability company with its principal place of business in California and its members are all resident of California. Def.'s Answer to Second Am. Compl. ¶¶ 3-4. Dynamic is therefore a citizen of California. *See Fellowes, Inc.*, 759 F.3d at 787-88.

reasonable attorney's fees, and costs. *Id.* PSI argues that the reduced amount in controversy alleged in its SAC does not destroy the Court's jurisdiction because, under Seventh Circuit law, the requirements for diversity jurisdiction must be satisfied only at the time a suit is filed and "subsequent events" that decrease the amount in controversy do not divest the court of jurisdiction. Pl.'s Reply in Supp. of Summ. J. Mot. 2-3, ECF No. 93 (citing *Grinnell Mut. Reinsurance Co. v. Shierk*, 121 F.3d 1114, 1116 (7th Cir. 1997); *Cook v. Winfrey*, 141 F.3d 322, 326 (7th Cir. 1998)).

It is well-established that the requirements for diversity jurisdiction need only be satisfied at the time a suit is filed, and a later reduction of the amount in controversy does not destroy jurisdiction. *Shierk*, 121 F.3d at 1116; *Client Funding Sols. Corp. v. Crim*, No. 10-cv-0482, 2010 WL 1839358, at *1-2 (N.D. Ill. May 6, 2010). But an exception to this rule applies where a plaintiff voluntarily amends his complaint. *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473-74 (2007). The Supreme Court has held that "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." *Id.* A plaintiff's subsequent withdrawal of the original allegations that established jurisdiction may defeat jurisdiction, unless the allegations are replaced by others that establish jurisdiction. *Id.* In other words, the principle of "once jurisdiction, always jurisdiction" does not apply "if the plaintiff amends away jurisdiction in a subsequent pleading," in which case the complaint should be dismissed.[3] *Cunningham Charter Corp. v. Learjet, Inc.*, 592 F.3d 805, 807 (7th Cir. 2010) (citing *Rockwell Int'l Corp.*, 549 U.S. at 473-74).

---

[3] Courts have acknowledged that this exception does not apply in removal cases where a plaintiff amends his complaint to destroy federal jurisdiction and obtain a remand. *Rockwell Int'l Corp.*, 549 U.S. at 474 n.6; *Townsquare Media, Inc. v. Brill*, 652 F.3d 767, 773 (7th Cir. 2011). As the Supreme Court stated, removal cases raise "forum-manipulation concerns that simply do not exist when it is the *plaintiff* who chooses a federal forum and then pleads away jurisdiction

Here, the exception recognized by the Supreme Court in *Rockwell* and by the Seventh Circuit in *Cunningham* applies because PSI has voluntarily amended its complaint.[4] Therefore, the Court looks to the SAC to determine whether subject matter jurisdiction exists. PSI appears to have amended away jurisdiction by voluntarily reducing the amount of unpaid invoices it is seeking to recover from $78,043.47 to $70,049.57. But PSI's SAC also seeks 18% interest on the $70,049.57 it is owed,[5] attorney's fees, and costs. The Court must therefore consider whether these additional amounts may be counted as part of the jurisdictional amount in controversy to reach $75,000.[6] Also relevant to that question is the legal certainty test, which directs that courts

---

through amendment." *Rockwell Int'l Corp.*, 549 U.S. at 474 n.6 (emphasis in original). When a plaintiff in a removal case abandons his federal claims, he deprives the defendant of the opportunity to defend the claims "in the court that obtained jurisdiction of the case on the defendant's initiative." *Townsquare Media, Inc.*, 652 F.3d at 773. Consequently, in removal cases, the plaintiff's voluntary amendment of his complaint will not destroy jurisdiction. *Rockwell Int'l Corp.*, 549 U.S. at 474 n.6; *Townsquare Media, Inc. v. Brill*, 652 F.3d at 773.

[4] PSI's voluntary amendment of its complaint is also distinguishable from the facts of the Seventh Circuit cases it cites applying the general principle that diversity jurisdiction must be satisfied only at the time a suit is filed. In *Shierk*, the decrease in the amount in controversy was not caused by the plaintiff's amendment of its claims. In that case, the plaintiff insurance company filed a complaint in federal court seeking a declaratory judgment that it was not liable for the defendant's conduct, which was the subject of a state court negligence lawsuit requesting $100,000 in damages. 121 F.3d at 1116-17. The amount in controversy in the federal case subsequently decreased after the jury in the state court lawsuit found the defendant liable for only $15,000 in damages. *Id.* In *Cook*, a change in the statutory minimum for diversity jurisdiction took affect after the plaintiff's first complaint was filed in federal court, and the jurisdictional minimum increased from $50,000 to $75,000. 141 F.3d at 326. Like *Shierk*, the subsequent events that could have destroyed jurisdiction were not the result of the plaintiff's voluntary actions.

[5] As of April 19, 2016, the total amount of interest due on the unpaid invoices was $38,403.80. PSOF, Ex. D.

[6] In its reply to Dynamic's response to the motion for summary judgment, PSI does not specifically argue that the addition of the interest, fees, and costs establishes the jurisdictional amount in controversy. However, in each of its complaints and in its statement of facts in support of its motion for summary judgment, PSI asserts that the amount in controversy exceeds $75,000. Because federal district courts have an independent duty to determine whether subject matter jurisdiction exists, *Belleville Catering Co. v. Champaign Mkt. Place, L.L.C.*, 350 F.3d 691, 693 (7th Cir. 2003), and a duty to exercise their jurisdiction where it does exist, *Adkins v.*

find federal jurisdiction unless it appears "to a legal certainty" that the plaintiff's claims are less than the jurisdictional amount. *Smith v. Am. Gen. Life and Accident Ins. Co., Inc.*, 337 F.3d 888, 892 (7th Cir. 2003).

Section 1332 explicitly excludes "interest and costs" from the jurisdictional amount in controversy. 28 U.S.C. § 1332. But courts have acknowledged that interest and attorney's fees may, in certain circumstances, be considered when calculating the amount in controversy for subject matter jurisdiction. In *Brown v. Webster*, the Supreme Court distinguished between "interest as such," which is an "accessory demand" that cannot be included in the jurisdictional amount in controversy, and interest that is part of a principal demand, which may be considered when determining jurisdiction. 156 U.S. 328, 329-30 (1895). The Court ruled that the interest sought by the plaintiff in *Brown* could be considered in the amount in controversy because it was part of the sum of the damage resulting from the plaintiff's eviction. *Id.* Federal appeals courts have interpreted *Brown* to mean that interest may be included in the jurisdictional amount if it is an integral part of the damages sought by the plaintiff. *See Velez v. Crown Life Ins. Co.*, 599 F.2d 471, 473-74 (1st Cir. 1979); *Brainin v. Melikian*, 396 F.2d 153, 155 (3d Cir. 1968); *Danial v. Daniels*, 162 F. App'x 288, 290-91 (5th Cir. 2006). But some appellate courts, including the Seventh Circuit, have further held that interest which becomes due solely because of a delay in payment cannot be included in the amount in controversy under § 1332(a). *Principal Mut. Life Ins. Co. v. Juntunen*, 838 F.2d 942, 943 (7th Cir. 1988) ("interest for purposes of § 1332(a) is a sum that becomes due because of delay in payment"); *State Farm Mut. Auto. Ins. Co. v. Navarez*, 149 F.3d 1269, 1271 (10th Cir. 1998) (interest is not counted towards the amount in controversy

*VIM Recycling, Inc.*, 644 F.3d 483, 496 (7th Cir. 2011), the Court considers whether these additional amounts can be included as part of the amount in controversy to establish diversity jurisdiction in this case.

if it was "an incident arising solely by virtue of a delay in payment of the underlying amount in controversy"); *Regan v. Marshall*, 309 F.2d 677, 678 (1st Cir. 1962) (interest cannot be included in the amount in controversy if it accrued "solely by virtue of a delay in payment," regardless of whether it accumulated based on contract, common law, or statute, or whether it was termed a penalty or damages). As explained in 14AA C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure: Jurisdiction 4th § 3712 at 817-18 (2011), "[t]he apparent purpose of excluding interest in computing the jurisdictional amount is to prevent the plaintiff from delaying suit until the substantive claim, with accruing interest, exceeds the statutory minimum. Thus, interest uniformly is excluded under the rule of Brown v. Webster, if it is only incidental to the claim the plaintiff is asserting or if it arises solely by virtue of a delay in the payment of an obligation."

District courts have applied these holdings to prevent parties from including interest in the amount in controversy if it arose solely because of a delay in payment, even when the interest is provided for by a contractual provision. *See Crane Equip. & Servs., Inc. v. B.E.T. Const., Inc.*, No. 14-CV-175S, 2015 WL 471323, at *2-3 (W.D.N.Y. Feb. 4, 2015) (monthly interest charge for unpaid balance, provided for by contract, constituted interest accruing by virtue of delay in payment and therefore could not be included in amount in controversy); *A.K. Suda, Inc. v. Purvis Marine Ltd.*, No. 08-3971, 2008 WL 4948990, at *2 (E.D. La. Nov. 18, 2008) (contract provision applying 1.5% interest charge on invoices unpaid for more than 30 days was "precisely the type of interest meant to be excluded" by § 1332); *Meding v. Receptopharm, Inc.*, 462 F. Supp. 2d 348, 353 (E.D.N.Y. 2006) (post-default interest imposed by contract could not be included in amount in controversy because it was a mere accessory to the principal obligation). The same result should obtain here, where the 18% interest sought by PSI is clearly a sum due because of

Dynamic's delay in payment, and is incidental to the breach presented by PSI's claim, so the Court will not consider it as part of PSI's jurisdictional amount in controversy. *See id.*

Attorney's fees may also be considered in the jurisdictional amount in controversy when the fees are provided for in a contractual provision and sought as part of an underlying claim rather than pursuant to a separate post-judgment right to costs or fees incurred in the litigation. *El v. AmeriCredit Fin. Servs., Inc.*, 710 F.3d 748, 753 (7th Cir. 2013). Work performed prior to filing a complaint may be included in the calculation of attorney's fees to reach the jurisdictional amount in controversy. *See ABM Sec. Servs., Inc. v. Davis*, 646 F.3d 475, 479 (7th Cir. 2011). However, attorney's fees incurred after the filing of the lawsuit and during the federal litigation cannot be considered in the jurisdictional minimum. *Hart v. Schering-Plough Corp.*, 253 F.3d 272, 274 (7th Cir. 2001).

Here, PSI's contracts with Dynamic provide for "reasonable attorney's fees" for the collection of unpaid invoices.[7] PSOF, Ex. A. PSI's pre-filing attorney's fees can therefore be considered in the jurisdictional amount in controversy. To reach the required amount in controversy of $75,000, the pre-filing attorney's fees incurred by PSI must total a minimum of $4,951.43.[8] The complaint filed by PSI in August 2014 involved multiple unpaid invoices at eight different locations with eight separate contracts. Before filing its complaint, PSI engaged in written and oral correspondence with Dynamic to demand payment of the outstanding invoices. *See* Def.'s Mot. for Leave to File Countercl., Ex. 4, Apr. 19, 2016, ECF No. 75. The Court finds that it is quite likely that PSI incurred an obligation to pay attorneys' fees in excess of $4,951.43

---

[7] "Client agrees to pay PSI's cost of collection of all amounts due and unpaid after thirty (30) days, including court costs and reasonable attorney's fees." PSOF, Ex. A.

[8] Dynamic does not assert any factual challenges regarding the pre-filing attorney's fees PSI incurred. It only states that PSI cannot include its post-filing attorney's fees in the amount in controversy.

before filing its initial complaint in view of the pre-filing legal work necessary in this case, including investigation of PSI's claims, review of its contracts and unpaid invoices, correspondence with Dynamic's counsel, and drafting the complaint. *See Richardson v. Bart's Car Store, Inc.*, No. 1:14-cv-00707-SEB-DKL, 2015 WL 5667098, at *5 (S.D. Ind. Sept. 25, 2015) (permitting inclusion of $17,210 in pre-filing attorneys' fees in calculating minimum amount in controversy needed to avoid contractual arbitration provision*); Brocuglio v. Thor Motor Coach, Inc.*, No. 3:14 CV 2097, 2017 WL 1197282, at *5 (N.D. Ind. Mar. 31, 2017) (permitting inclusion of $3,479.15 in pre-filing attorney's fees to reach jurisdictional minimum amount in controversy); (*ABM Sec. Servs., Inc.*, 646 F.3d at 479) (finding that it is "quite plausible that the value of preliminary legal work in a class-action lawsuit exceeds $5,552.00). Therefore, the Court finds that it has diversity jurisdiction under § 1332(a). It does not appear to a legal certainty that the amount of unpaid invoices sought by PSI, in addition to its pre-filing attorney's fees, does not amount to more than $75,000.

## B.      Breach of Contract

PSI argues that the undisputed evidence establishes each element necessary to prove breach of contract by Dynamic. In response, Dynamic argues that PSI's motion for summary judgment should be denied because PSI has not presented admissible evidence to prove its claim.

To prevail on a breach of contract claim under Illinois law, PSI must demonstrate: (1) the existence of a valid and enforceable contract; (2) substantial performance by PSI; (3) a breach by Dynamic; and (4) resultant damages. *Dual-Temp of Ill., Inc. v. Hench Control, Inc.*, 821 F.3d 866, 869 (7th Cir. 2016) (citing *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th 2010) (applying Illinois law)). PSI's statement of facts, which the Court finds are adequately supported by admissible evidence and undisputed by Dynamic, establishes each of these required

elements. PSI entered into contracts with Dynamic to provide construction, materials, and geotechnical services at the seven Locations. PSOF ¶¶ 6, 17, 20, 23, 26, 29, 32, 35. Each of the contracts included a provision that Dynamic would pay PSI for all invoiced work within 30 days of receiving the invoice. *Id.* ¶¶ 7-12, Ex. A. The contracts further provided that Dynamic would pay 18% interest per year for each unpaid invoice, as well as PSI's costs for collecting unpaid invoices. *Id.* PSI performed the agreed-upon services at each of the seven Locations, i*d.* ¶¶ 13, 18, 21, 24, 27, 30, 33, 36, 44-47, but Dynamic breached the payment provision of the contracts by failing to pay the invoiced amounts for PSI's services at the seven Locations. *Id.* ¶¶ 14, 19, 22, 25, 28, 31, 34, 37, 48. As a result, PSI has suffered damages totaling $70,048.77 for the unpaid invoices at the seven Locations. *Id.* ¶¶ 14, 19, 22, 25, 28, 31, 34, 37. In addition, under the contracts, PSI is entitled to collect 18% interest per year on each unpaid invoice and the collection costs incurred as a result of the unpaid invoices, including court costs and reasonable attorney's fees. *Id.* ¶¶ 7-12.

Dynamic has presented no evidence to establish a genuine dispute with regard to these facts. Rather, it simply asserts that PSI's evidence in support of the facts is inadmissible. The Court has considered and rejected each of Dynamic's objections. *See supra* Sections I(A)-I(B). PSI has established that it is entitled to judgment on its breach of contract claim against Dynamic.[9]

---

[9] Because PSI asks that the Court grant summary judgment on its account stated claim "in the alternative" of granting summary judgment on its breach of contract claim, the Court does not consider the account stated claim in light of its finding for PSI on the breach of contract claim. Pl.'s Memo. in Supp. of Summ. J. Mot. 7, ECF No. 72. *See also Fabrica de Tejidos Imperial, S.A. v. Brandon Apparel Grp., Inc.*, 218 F. Supp. 2d 974, 979 (N.D. Ill. 2002) (account stated is "merely an alternate theory for proving the same damages asserted in a breach of contract claim").

## C.    Affirmative Defenses

Dynamic argues that PSI's motion for summary judgment should be denied because a genuine issue of material fact exists regarding Dynamic's asserted affirmative defense of setoff. Dynamic claims that it is entitled to such a defense due to PSI's negligence at the Compton and Bellflower locations. PSI's SAC and its motion for summary judgment do not raise any claims related to the Compton and Bellflower locations, however, and PSI argues that, according to the Court's prior rulings in this case, Dynamic's setoff claims are outside the scope of this litigation. PSI further asserts that setoff cannot be an affirmative defense to breach of contract.

As noted by PSI, Dynamic has previously tried—unsuccessfully—to raise its Compton and Bellflower claims on two occasions during the course of this litigation. Although Dynamic failed to plead any counterclaims in response to PSI's first and second amended complaints, in January 2016, three weeks before the scheduled close of discovery, Dynamic moved for leave to file counterclaims against PSI regarding the Compton and Bellflower locations. In its motion, Dynamic stated that the Compton and Bellflower locations "have not been at issue in this case, and are not at issue in PSI's operative second amended complaint." Def.'s Mot. for Leave to File Countercl. ¶ 1, Jan. 14, 2016, ECF No. 62. The Court denied Dynamic's motion, ruling that it was too late in the litigation for Dynamic to assert counterclaims that were permissive and unrelated to the claims in PSI's SAC. Order, Jan. 21, 2016, ECF No. 64.

In April 2016, Dynamic again sought to raise its Compton and Bellflower claims by amending its affirmative defenses to the SAC. Dynamic's original affirmative defenses to the SAC alleged that PSI caused Dynamic to incur substantial costs and damages as a result of PSI's failure to adequately perform services at "the Locations." Def.'s Answer to Second Am. Compl. 5-8, ECF No. 57. "The Locations" is a defined term in the SAC and Dynamic's answer and

includes only El Centro, Desert Hot Springs, San Bernardino, Blythe, Indio, Lucerne Valley, and Holtville—not Compton or Bellflower. *Id.* Dynamic moved to amend so it could clarify that its affirmative defenses are based on PSI's negligence at Compton and Bellflower and not "the Locations" as defined in the SAC. Def.'s Mot. for Leave to File Countercl. ¶¶ 1-4, Apr. 19, 2016, ECF No. 75. In its motion, Dynamic asserted that, despite its use of the term "the Locations," the discovery and the record in the case clearly established that its setoff defense was based on the Compton and Bellflower locations. *Id.* ¶¶ 4-11. The Court rejected Dynamic's argument and found that regardless of any prior discovery or correspondence between the parties, the affirmative defenses pleaded by Dynamic referred only to "the Locations" as defined in the SAC and therefore did not include the Compton and Bellflower locations. Order, Apr. 26, 2016, ECF No. 77. The Court ruled that it was too late to assert affirmative defenses *or* counterclaims regarding Compton and Bellflower, two locations that were unrelated to PSI's claims and had not been the subject of the litigation. Despite this ruling, Dynamic now attempts for a third time to assert its Compton and Bellflower claims in this lawsuit—this time as a means to defeat summary judgment.

Dynamic and PSI argue over whether setoff can be plead as an affirmative defense. This debate is academic, since Dynamic did not plead setoff as to the Compton and Bellflower locations as an affirmative defense (because the Court did not permit it to amend its responsive pleading to do so, for the reasons discussed above). But in any event, a setoff claim does not defeat a plaintiff's right of action and therefore is not an affirmative defense. *E.g.*, *Citadel Grp. Ltd. v. Washington Reg'l Med. Ctr.*, No. 07-CV-1394, 2009 WL 1329217, at *4 (N.D. Ill. May 13, 2009); *Cipa Mfg. Corp. v. Allied Golf Corp.*, 94 C 6574, 1995 WL 337022, at *2 (N.D. Ill. June 1, 1995); *Nadhir v. Salomon*, 957 N.E.2d 1221, 1231, 2011 IL App (1st) 110851 ¶ 37 (Ill.

App. Ct. 2011) (citing *Schieffelin & Co. v. Valley Liquors, Inc.*, 823 F.2d 1064, 1065-66 (7th Cir. 1987)). Rather, setoff is a counterclaim that seeks affirmative relief or mitigation of damages that a liable defendant owes to a plaintiff. *Benford v. Everett Commons, LLC*, 10 N.E.3d 367, 372, 2014 IL App (1st) 131231 (Ill. App. Ct. 2014) (citing *Nadhir*, 957 N.E.2d at 1231). It is often based upon a transaction extrinsic to the transaction at issue in the plaintiff's complaint. *Id.*

Dynamic's setoff claims based on the Compton and Bellflower projects are counterclaims and not affirmative defenses. Furthermore, they are not compulsory, but permissive counterclaims that are unrelated to PSI's complaint. Courts may be lenient in allowing a defendant to proceed with its setoff claim despite the fact that the defendant improperly pleaded the claim as an affirmative defense instead of a counterclaim. *See Lake Cnty. Grading Co. of Libertyville, Inc. v. Advance Mech. Contractors, Inc.*, 654 N.E.2d 1109, 1118, 275 Ill. App. 3d 452, 462 (Ill. App. Ct. 1995) (finding no error in the trial court's decision to allow defendant to assert setoff as an affirmative defense, despite the fact that it should properly have been labeled a counterclaim); *see also* Fed. R. Civ. P. 8(c)(2) ("[i]f a party mistakenly designates a defense as a counterclaim or a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated"). However, that leniency does not change the underlying nature of the claim.[10] Dynamic's Compton and Bellflower claims are permissive counterclaims that are "independent piece[s] of litigation." *Tenneco Inc. v. Saxony Bar & Tube, Inc.*, 776 F.2d 1375, 1379 (7th Cir. 1985) ("a permissive counterclaim is an independent piece of litigation, appended simply for convenience").

---

[10] Furthermore, it provides Dynamic no help in this case. As already discussed, Dynamic has attempted to assert its Compton and Bellflower claims as counterclaims *and* as affirmative defenses. The Court has rejected both attempts.

The Court sees no reason to reverse its prior rulings that Dynamic's Compton and Bellflower claims cannot be asserted in this lawsuit. The Court has discretion to deny a defendant leave to add permissive counterclaims and did so here because Dynamic waited too long to assert the claims and provided no good reason for its delay.[11] *See Lincolnway Cmty. Bank v. Allianz Life Ins. Co. of N. Am.*, No. 11 C 5907, 2016 WL 792011, at *2-3 (N.D. Ill. Mar. 1, 2016) ("district courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile"). Furthermore, the claims would have required additional discovery and would have created a significant delay in the litigation. *See id.* The Court determined that PSI would suffer undue prejudice if Dynamic was permitted to belatedly assert its Compton and Bellflower claims, and Dynamic would face little to no prejudice if its motion was denied; to the extent that Dynamic has its own breach of contract claims against PSI, this ruling in no way precludes it from asserting them in another suit. The Compton and Bellflower claims are not part of this litigation and do not raise a genuine dispute of material fact preventing summary judgment in favor of PSI.

Dynamic's answer to the SAC also asserts affirmative defenses of negligent misrepresentation, estoppel, mistake of fact, and waiver. As previously discussed, these affirmative defenses as pleaded in Dynamic's answer are based on allegations that PSI negligently performed at the seven Locations, and the Court denied Dynamic's motion to amend

---

[11] In arguing its motions for leave to assert counterclaims and to amend its affirmative defenses, Dynamic acknowledged that it had been aware of its potential claims as to Compton and Bellflower during the entirety of this litigation. *See* Def.'s Mot. for Leave to File Countercl. ¶ 4, Jan. 14, 2016, ECF No. 62; Def.'s Mot. for Leave to Amend Affirmative Defenses ¶ 6, Apr. 19, 2016, ECF No. 75. In arguing those motions, Dynamic provided no good reason for its delay in asserting those claims and its response to PSI's summary judgment motion similarly fails to explain why the Court's decision was an abuse of its discretion to deny Dynamic's belated attempts to expand the scope of this case after discovery had already run its course.

the defenses to include the Compton and Bellflower locations. *See supra* Section II(C).
Dynamic's affirmative defenses claim that environmental contamination and underground
storage tanks were found at the Locations after PSI represented the contrary to Dynamic. But PSI
has demonstrated that it is undisputed that no environmental contamination or underground
storage tanks were present at the seven Locations and that PSI did not make false representations
to Dynamic regarding the Locations. PSOF ¶¶ 46-47. Dynamic, therefore, is not entitled to the
affirmative defense of negligent misrepresentation, estoppel, mistake of fact, or waiver.

*        *        *

The Court grants PSI's motion for summary judgment and enters judgment in favor of
PSI and against Dynamic on PSI's breach of contract claim for $108,452.57, plus the additional
amount of interest accrued on the unpaid invoices since the filing of PSI's motion for summary
judgment, costs, and PSI's reasonable attorneys' fees.

Date: December 6, 2017

John J. Tharp, Jr.
United States District Judge